**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

<u>Kenneth William Colassi</u>

    **v.**                        Civil No. 10-cv-562-PB
                                      Opinion No. 2012 DNH 086

<u>The Hartford Life & Accident</u>
<u>Insurance Company, et al.</u>

<u>**MEMORANDUM AND ORDER**</u>

Kenneth Colassi, a former participant in the BAE Systems Funded Welfare Benefit Plan ("Plan"), brings a pro se Employee Retirement Income Security Act ("ERISA") action against the Plan Administrator, BAE Systems Inc. ("BAE"), seeking to recover disability benefits allegedly owed him.  Both Colassi and BAE have moved for judgment on the administrative record.  For the reasons set forth below, I grant the Plan's motion and deny Colassi's motion.

## I.  <u>BACKGROUND</u>[1]

### A.  <u>Employment with BAE & the Plan</u>

After working at BAE for many years as a programmer

---

[1] Because Colassi has not provided a cogent statement of the record facts, I have relied on BAE's briefing to alert me to the material facts, insofar as such facts are actually supported by the administrative record.  I cite to the record with the notation "Tr."

analyst, Colassi's employment was terminated on April 16, 2009.
At the time, BAE was implementing a reduction in force.[2]

As an employee of BAE, Colassi was insured under the
company's short-term disability plan, which provides short-term
income protection for an employee who becomes disabled as the
result of a covered accident or sickness.  Tr. 136.  The Plan
names BAE as the Plan Administrator and Employer/Plan Sponsor,
and vests BAE with final responsibility for deciding appeals of
claims, determining eligibility for coverage, and paying out
benefits.  Tr. 134, 141, 146.  It further provides that BAE "has
full discretion and authority to determine eligibility for
benefits and to construe and interpret all terms and provisions
of the Plan."  Tr. 143.

Benefits under the Plan are payable to covered employees
who become "Totally Disabled" and furnish proof that they remain
disabled.  Tr. 138.  The Plan explains that individuals are
"Totally Disabled" when they are prevented "from performing the
essential duties of [their] occupation" by accidental bodily
injury, sickness, mental illness, substance abuse, or pregnancy,
"and as a result, . . . earn[] less than 20% of [their] pre-
disability Weekly Earnings."  Tr. 145.  Claimants must provide

---

[2] Colassi asserts that the reduction in force was pretextual, and
not the true motivation for his discharge.

2

written proof that establishes their entitlement to benefits.
Tr. 142.

**B.   Colassi's Medical History and Filing of Claim**

In September 2008, Colassi saw his primary care physician,
Dr. Ihab Ziada, about joint pain and muscle aches.  Tr. 55-56.
Dr. Ziada's notes from that session mention that Colassi had
been bitten by a tick, though Dr. Ziada believed Lyme disease
was unlikely.  Tr. 56.  The notes do not mention Colassi raising
any other concerns.  Id.

In a series of appointments spanning August and September
2008, Colassi visited the office of Dr. David Frost, a
chiropractor.  Tr. 69-74.  Dr. Frost administered chiropractic
adjustments to alleviate Colassi's back pain.  Id.

Colassi returned to Dr. Ziada's office in December 2008,
complaining of lower back pain and muscle spasms.  Tr. 61.  Dr.
Ziada's notes indicate that Colassi had a history of
gastroesophageal reflux disease.  Id.  Dr. Ziada prescribed
Vicodin for Colassi's back pain and Prilosec OTC for the reflux.
Id.

In February 2009, Colassi saw Dr. Ziada twice for upper
respiratory symptoms and was diagnosed with sinusitis.  Tr. 62-
65.  Dr. Ziada's notes do not mention that Colassi complained of
reflux or back pain on either visit.

3

Colassi returned to Dr. Ziada's office on April 22, six days after his employment with BAE had been terminated, and told the doctor that his reflux disease required him to sleep at a 45-degree angle and that he suffered severe back pain as a result of his inability to lie flat.  Tr. 67.  In his notes, Dr. Ziada indicated that Colassi had "recently been laid off," and he described the appointment as "mainly a counseling dominat[ed] session where we talked about the outcome of the reflux symptoms, how [] we control it, the back pain, what options orthopedics might help us, what options physical therapy and chiropractor work might help us with."  Id.

Colassi filed a claim for short-term disability benefits on November 16, 2009 based on his acid reflux and back issues.  BAE subsequently advised Colassi that based on the date his employment was terminated, he would have had to become disabled no later than April 30, 2009 to be eligible for benefits.

Colassi saw Dr. Ziada on December 21, 2009, and again complained that his extreme reflux symptoms forced him to sleep at a 45-degree angle, which placed "a tremendous amount of pressure on his lower back" and resulted in "lumbar strain." Tr. 68.  Colassi stated that he was unable to sit or stand for more than 15 or 20 minutes due to the back pain.  Id.  Dr. Ziada noted that he believed Colassi was in need of surgical

4

intervention to help with his reflux.  Id.

C.  **Initial Claim Process**

In response to a request from Hartford-Comprehensive Employee Benefit Service Company ("Hartford"), the Claims Administrator under the Plan, Dr. Ziada completed an Attending Physician's Statement of Functionality ("APS") on December 22, 2009.  Tr. 77.  Dr. Ziada stated that Colassi's injury was secondary to a "[r]ogue dilation proced[ure] on his lower esophageal sphincter," and caused a primary diagnosis of "lower esophageal sphincter incompetence."  Id.  He listed lower back pain, insomnia, and fatigue as secondary diagnoses, and burning in the chest, lower back pain, asthma, shortness of breath, and fatigue as Colassi's subjective symptoms.  Id.  On the functional capability portion of the form, Dr. Ziada indicated that Colassi could occasionally lift up to 20 pounds, and could sit, stand, and walk for a total of 1 hour per day.  Tr. 78.

On January 24, 2010, Colassi's attorney, Ronald Eskin, provided Hartford with the treatment notes of Dr. Ziada and Dr. Frost that have been summarized above.  The file was referred to medical case manager Kristina Baggett, R.N., for a determination about whether Colassi's condition supported a disability finding.

5

After reviewing the file, Ms. Baggett noted that there were "[n]o exam findings, diagnostics, or RLS [restrictions and limitations] as of 4/22/09" and that clarification was needed. Tr. 118.  On March 10, 2010, she faxed a letter to Dr. Ziada requesting that he confirm that Colassi's April 22 "office visit was primarily a counseling session regarding [] options for ongoing treatment."  Tr. 93.  The letter stated that the notes of Dr. Ziada's session contained "no indication of a full body physical exam, updated diagnostics performed at that time or specific restrictions or limitations being placed [on] Mr. Colassi at that time."  Id.  The following day, Dr. Ziada signed the letter that Ms. Baggett had faxed to him, and faxed it, along with his December 21, 2009 treatment notes, back to her office.  Tr. 47-49.  Dr. Ziada did not include any documentation that would rebut Ms. Baggett's interpretation of his treatment notes through April 22, 2009.

On March 15, 2010, Ms. Baggett provided an assessment of Colassi's file, and concluded that Colassi's claim was insufficiently supported by the medical evidence that had been produced.  Tr. 116.  The claims managers responsible for Colassi's claim concurred with Ms. Baggett's recommendation. Tr. 115.  On March 29, Colassi was denied disability benefits by a letter that explained:

> Our records show that you ceased working as a
> programmer analyst on 04/16/09 due to lower esophageal
> sphincter incompetence.  The medical information
> received from Dr. Ziada indicated that you were seen
> on 04/22/09 and 12/21/09.  A review of the office
> visit notes from 04/22/09 indicated that you had
> complaints of gastroesophageal reflux disease and low
> back pain with lumbar radiculopathy, however, the
> visit was primarily a counseling session regarding
> options for ongoing treatment.  In an attempt to
> further assess your disability, a fax was sent to Dr.
> Ziada's office by our Medical Case Manager on 03/10/10
> to find out if there were any physical exam findings,
> diagnostic results or specific restrictions that would
> support your disability and inability to perform the
> essential job duties of your occupation.  We received
> Dr. Ziada's response confirming that your 04/22/09
> office visit was primarily a counseling session for
> options regarding ongoing treatment.  Based upon the
> information on file, Total Disability was not
> supported.  Therefore, we have denied liability of
> your claim.

Tr. 90-91.  The letter also informed Colassi of his right to

appeal the determination.

**D.  <u>Appeal of Denial</u>**

On May 7, 2010, Eskin sent a fax to Hartford with

additional medical information about Colassi.  He included a

written statement from Dr. Ziada indicating that Colassi's

medical condition worsened between April and September 2009, as

"the back pain from his incline sleeping position had worsened.

[H]is sleep ha[d] become more fragmented.  This also [led] to

extreme fatigue and daytime somnolence."  Tr. 40.  Eskin also

included a Physical Residual Functional Capacity Questionnaire

dated September 9, 2009, in which Dr. Ziada stated that
Colassi's pain would constantly interfere with the attention
necessary to perform simple work tasks, and that Colassi would
need to be able to shift positions at will and take unscheduled
15-minute breaks daily.  Tr. 42-44.  Dr. Ziada further opined in
the questionnaire that Colassi could: tolerate low stress jobs;
walk 3 city blocks without rest or severe pain; and sit and
stand/walk for about 2 hours in an 8-hour workday, for 1 hour at
a time.  Id.

Eskin filed an appeal of the denial of Colassi's short-term
disability benefits on May 10, 2010.  Tr. 38.  In the letter of
appeal, Eskin stated that there was "no sound basis to assert[]
that because a complete physical exam did not take place on
April 22, 2009, evidence does not exist that [Colassi] was not
disabled that month."  Id.  He argued that although Dr. Ziada
created the functional description months afterward, on
September 9, 2009, it was nevertheless applicable to Colassi's
condition in April of that year.  Id.

In response to a solicitation for more information, Eskin
submitted documentation of Social Security Administration
proceedings in which Colassi had been granted disability
benefits.  Tr. 24.  The Administrative Law Judge ("ALJ") in the
Social Security case determined that Colassi was capable of

performing sedentary work, but would need to frequently change
position and take unscheduled breaks.  Tr. 31.  The ALJ
determined that these additional limitations rendered him unable
to perform either his past relevant work or other work existing
in significant numbers in the national economy.  Tr. 32-33.

After reviewing the materials on file, including the newly
submitted information, Matt Carson, a specialist in claims
appeals, concluded that it was unclear whether the evidence
supported the restrictions and limitations indicated by Dr.
Ziada, and that independent medical reviews would be necessary.
Tr. 110-12.  An outside medical vendor, MES Solutions ("MES"),
was contacted to perform an independent review.

To assess Colassi's status, MES engaged two doctors, who
consulted with each other prior to giving their opinions.  Dr.
Dorothy Lowe, an internist, concluded:

> Based on the medical information provided and [my]
> conversation with Dr. Ziada, Mr. Colassi should be
> able to work 8 hours a day with no restrictions.
>
> The claimant has self reported complaints of fatigue
> and insomnia[,] however there are no
> objective/clinical findings that would warrant a
> restriction in function due to these complaints.
>
> . . . .
>
> The records show that the claimant has self reported
> complaints of low back pain, muscle tenderness, and
> fatigue, however[, they] do not support functional
> impairment or need for restrictions.

Tr.  18-19.  Dr. Kopacz, an orthopedist, concluded:

> There is no medical documentation of any functional
> impairment from 4/17/09 to the present.
>
> The claimant has back pain complaints which are self
> reported with minimal findings on exam.  Since there
> is no objective/clinical evidence of any impairment,
> the claimant would not have any functional impairment
> in terms of his lumbar spine.  He has only self
> reported complaints of pain and the exam shows some
> tenderness.  There are no documented neurological
> findings.  The MRI shows some disc degeneration which
> would be appropriate for his age and would not
> [a]ffect functional capabilities.

Tr. 20.

Carson completed his evaluation after receiving the

independent medical reviews from MES.  He stated:

> Dr. Ziada certified restrictions that would prevent
> Mr. Colassi from performing even sedentary work.
> However, there are few examination findings/test
> results to support the severity of symptoms described
> by Mr. Colassi and Dr. Ziada.  Additionally, although
> Mr. Colassi's attorney points to loss of income and
> health insurance as a cause, the degree of treatment
> Mr. Colassi sought, even prior to the termination of
> his income and health insurance, does not speak to
> severe and progressively impairing chronic medical
> conditions.  Also, many of the symptoms on which Mr.
> Colassi's claim of Disability is based, such as
> insomnia, dizziness, drowsiness from medications, and
> daytime somnolence, are not described in the records
> of Dr. Ziada's evaluations.  The weight of the
> evidence, including the independent reviews of Dr.
> Lowe and Dr. Kopacz, does not support that Mr. Colassi
> has required significant restrictions or limitations
> on his activities since 4/17/09.  Therefore, there is
> no evidence that he has been unable to perform the
> essential duties of his sedentary occupation, and he

would not have met the Plan's definition of Total
Disability.

Tr. 108-09.

Because BAE retains authority as Plan Administrator to make
final determinations on appeals of claims initially denied,
Carson referred Colassi's file to BAE.  Carson provided the
recommendation above, along with all of Colassi's medical
documentation.  BAE referred the file to a separate outside
medical vendor, MCMC, to have another independent physician
review the file.  Dr. Robert Cooper, an internist, performed the
review and stated the following in his report:

> **RECOMMENDATION:**
> 1.  There is not sufficient documentation to support
> the contention that the participant's conditions
> (gastroesophageal reflux, low back pain, asthma and
> fatigue) during the period beginning April 16, 2009
> render him partially or totally disabled in the
> performance of his own occupation as a programmer
> analyst.
>
> 2.  The documentation does not support that the
> participant's conditions (gastroesophageal reflux, low
> back pain, asthma and fatigue) were sufficient for a
> finding of partial disability.
>
> .  .  .  .
>
> **RATIONALE:**
> The submitted documentation and examination findings
> and test results do not support the severity of
> symptoms described by Dr. [Ziada].  In addition, some
> of the symptoms such as insomnia and daytime
> somnolence are not described in the evaluations of Dr.
> [Ziada] and there are no sleep studies.  Based on
> review of the medical records, there is no evidence

11

that the claimant would be unable to perform the
essential duties of his sedentary occupation.  There
is no clinical evidence by exam or diagnostic studies
or consult evaluations to support the contention that
the participant's conditions (gastroesophageal reflux,
low back pain, asthma and fatigue), during the period
beginning April 16, 2009, cause impairments of a
severity to render him partially or totally disabled.

Tr. 8.

By letter dated September 14, 2010, the BAE Systems Appeals
Committee upheld the denial of short-term disability benefits.
Tr. 1.  After detailing Colassi's clinical history, Dr. Ziada's
opinion, and the opinions of the independent medical reviewers,
the Appeals Committee explained that the records provided did
not support a finding of disability beginning April 16, 2009.
Tr. 3.  The Appeals Committee also addressed the approval of
Colassi's Social Security Insurance benefits, explaining that in
making Social Security determinations, "self-reported symptoms
are given more consideration even when they are not verified
through actual exams or medical testing as long as the treating
physician includes them in his assessment.  The BAE Systems Plan
is not bound by the SSA guidelines for determining disability."
Tr. 4.

After BAE denied his appeal, Colassi filed the present
action, pro se, in this court, seeking to overturn BAE's denial
of benefits.

12

## II.   <u>STANDARD OF REVIEW</u>

The standard of review in an ERISA case differs from that in an ordinary civil case, where summary judgment is designed to screen out cases that raise no trialworthy issues.  <u>See, e.g.</u>, <u>Orndorf v. Paul Revere Life Ins. Co.</u>, 404 F.3d 510, 517 (1st Cir. 2005).  In the ERISA context "summary judgment is simply a vehicle for deciding the issue[s]." <u>Cusson v. Liberty Life Assurance Co. of Boston</u>, 592 F.3d 215, 224 (1st Cir. 2010).

Where, as here, an ERISA benefits plan gives the Plan Administrator the discretion to determine eligibility for benefits, the Administrator's decision must be upheld unless it is "arbitrary, capricious, or an abuse of discretion." <u>Wright v. R. R. Donnelley & Sons Co. Grp. Benefits Plan</u>, 402 F.3d 67, 74 (1st Cir. 2005).  An Administrator's decision is not arbitrary or capricious if it is "reasoned and supported by substantial evidence." <u>Gannon v. Metro. Life Ins. Co.</u>, 360 F.3d 211, 213 (1st Cir. 2004).  Put differently, while my review is not a "rubber stamp," I must uphold the Administrator's decision "if there is any reasonable basis for it." <u>Wallace v. Johnson & Johnson</u>, 585 F.3d 11, 15 (1st Cir. 2009) (citation omitted).

13

### III.   ANALYSIS

BAE and Colassi have each filed a motion for judgment on the administrative record.   BAE contends that its denial of benefits should be upheld because its decision was reasonable and supported by substantial evidence in the record.   Colassi's arguments, however, are harder to discern, as he has filed a 78-page, single-spaced brief that is replete with biography and laden with invective, but short on legal analysis.   After reading Colassi's entire submission with care, and liberally construing his assertions as legal claims where possible,[3] I determine that his arguments are without merit and that BAE's decision to deny Colassi benefits is supported by substantial evidence in the record.

### A.   Incomplete & Inaccurate Record

The recurring theme of Colassi's brief is an attack on the administrative record, which he rails against as "a fabricated compiled pile of falsified documents that does not accurately reflect [his] medical history."   Pl.'s Mot. for J. ¶ 92, Doc. No. 55.   He asserts that the record misconstrues his medical

---

[3] I consider the entirety of Colassi's briefing in spite of his disregard of the Magistrate Judge's order emphasizing that briefs cannot exceed 35 pages and must include a statement of material facts with record citations.   See Order of December 7, 2011 ¶ 2, Doc. No. 28.

history to his detriment, id. ¶ 30, that the record fails to accurately reflect all of the injuries he suffered and the treatments he received, id. ¶¶ 44-91, and that various parts of the record, including doctors' notes, understate the severity of his conditions, id. ¶ 215.  He contends that no reasonable decision-maker that possessed an accurate medical history could deny his application for benefits.

As aptly explained by the Magistrate Judge in her order of December 7, 2001 (Doc. No. 29), Colassi misunderstands the scope of judicial review in an ERISA case.  Where the challenge is to the merits of a decision denying benefits, I can do no more than review the final decision of the Plan Administrator to assess whether that decision is supported by substantial evidence in the record.  See Orndorf, 404 F.3d at 519-20; Wright, 402 F.3d at 74.  Unless the claimant challenges the procedure used to arrive at the decision, I may not look to evidence outside of the record.  Orndorf, 404 F.3d at 519-20.  It is evident in this case that Colassi only challenges the substance, and not the procedure, of BAE's decision; aside from conclusory invocations of fraud that are based solely the allegedly erroneous outcome, Colassi has not asserted any facts that would suggest bias, prejudice, or other procedural defect in the decision under

15

review.[4]  Therefore, as with every other ERISA claimant who
challenges the substance of a decision denying benefits, Colassi
is stuck with the record as it exists, and cannot prevail by
impugning the completeness or veracity of that record.

**B.  <u>Claim of Inadequate Record Support for Decision</u>**

Intertwined with his attacks on the state of the record,
Colassi also challenges BAE's final decision.  I separate these
challenges from the attacks on the record and construe them as
arguments contesting whether BAE's decision is supported by
substantial evidence.  In general, Colassi asserts that BAE's
decision should be reversed because the record undisputedly
establishes that he suffers from severe reflux symptoms due to
his broken esophageal valve, excruciating back pain that stems
from his need to sleep at a 45-degree angle, and a constant lack
of sleep that affects his ability to focus on even simple tasks.
Specifically, Colassi draws attention to certain portions of the
record that he believes were overlooked or misinterpreted.

Colassi repeatedly contends that BAE failed to properly
account for Dr. Ziada's opinion that he was, and is, disabled.
Pl.'s Mot. for J. ¶¶ 89, 124, Doc. No. 55.  BAE was entitled,

_____

[4] Insofar as Colassi intends his assertions of an incomplete
record to serve as support for his malpractice claim against his
attorney, I do not offer any opinion about whether Eskin may
have been negligent in submitting documents into the record.

however, to give greater credence to the several independent physicians who opined that there was insufficient evidence of functional impairment than to Dr. Ziada and his contrary viewpoint.  See Black & Decker Disability Plan v. Nord, 538 U.S. 822, 834 (2003) ("[C]ourts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation."); Wright, 402 F.3d 67, 74 ("Evidence contrary to an administrator's decision does not make the decision unreasonable, provided substantial evidence supports the decision.").  Dr. Ziada's only findings supporting the existence of a disability occurred after the date Colassi would have had to show a disability to receive benefits, and his retroactive determination that Colassi was disabled in April 2009 finds little record support in the form of objective examinations or test results.  See Maniatty v. UNUMProvident Corp., 218 F.Supp. 2d 500, 504 (S.D.N.Y. 2002), aff'd, 62 Fed. App'x 413 (2d Cir. 2003) (noting that treating physicians are "more or less required" to accept a patient's subjective complaints, but that a plan administrator is "by no means required" to automatically accept such complaints as true where

there is little objective evidence in support).

Colassi also argues that BAE's decision rested on two faulty inferences.  First, he asserts that BAE's reliance on the fact that he did not mention his disability to Dr. Ziada in his initial visits is misplaced.  He explains that BAE should have understood that a person must develop a relationship of trust with a new primary care provider, and that he was not immediately forthcoming with Dr. Ziada because it took some time to establish the necessary relationship.  Pl.'s Mot. for J. ¶¶ 129, 162, 169, Doc. No. 55.  Second, he explains that he stopped seeing Dr. Frost for his back only because treatment was ineffective, and that BAE was not entitled to infer that his back symptoms were anything but ongoing and severe.  Id. ¶ 165. I conclude that neither of Colassi's points do much to satisfy his burden, because each does no more than provide a rationale for a lack of record evidence.  His burden, however, is to affirmatively show that BAE's decision has no reasonable basis and is not based on substantial evidence in the record.  See Gannon, 360 F.3d at 213.  Merely showing that certain evidence is not incompatible with the existence of his alleged disability is insufficient grounds for overturning BAE's decision.

In sum, Colassi has failed to show that BAE's decision was arbitrary, capricious, or an abuse of discretion.  See Wright,

402 F.3d at 74.  BAE had a reasonable basis, founded in
substantial record evidence, to conclude that Colassi had not
met his burden of showing disability as of April 2009.  See
Wallace, 585 F.3d at 15 (administrator's decision should be
upheld so long as there "is any reasonable basis for it"
(citation omitted)).  I therefore uphold BAE's determination
denying Colassi short-term benefits.

**C.  Long-term Disability Benefits**

     Although the record of the procedural history of this case
all pertains to a claim for short-term disability benefits,
Colassi argues that I should also rule on his application for
long-term disability benefits.  He states that he attempted to
submit an online claim for long-term benefits, and that Hartford
responded by mailing him a paper application to fill out.  Pl.'s
Mot. for J. ¶ 246, Doc. No. 55; Pl.'s Resp. to Reply Mem. ¶ 28,
Doc. No. 59.  He does not assert that he ever filled out or
returned the paper application.  He does assert, however, that
he later attempted to apply online a second time.  Pl.'s Resp.
to Reply Mem. ¶ 28, Doc. No. 59.

     "A plaintiff who wishes to raise an ERISA claim in federal
court must first exhaust all administrative remedies that the
fiduciary provides."  Medina v. Metro Life Ins. Co., 588 F.3d
41, 47 (1st Cir. 2009).  A claimant who seeks long-term

19

disability benefits must have exhausted a claim for long-term
benefits; exhaustion of a claim for short-term benefits alone
will not suffice to allow the claimant to pursue in federal
court an ERISA claim for long-term benefits.  See id. at 47-48.

In this case, the record does not support Colassi's
assertion that he has exhausted his administrative remedies for
long-term benefits.  He admits that his first online application
for long-term benefits was returned to him with instructions to
complete additional forms, and he concedes by his silence that
he never followed up to complete the application at that time.
With respect to Colassi's second online application, BAE agrees
that an application was submitted online, and it has produced
the completed form, which is dated February 2012.[5]  See LTD Form,
Doc. No. 57-1.  There is no record, however, of the outcome of
that claim for long-term benefits, and BAE asserts that Hartford
has yet to rule either on its timeliness or on its merits.
Def.'s Reply Mem. at 9, Doc. No. 57 ("There are serious
questions about whether any such claim is timely . . . .
Hartford . . . will now have to consider the claim in accordance
with the terms of the LTD policy and ERISA.").  Because there is

---

[5] I note that BAE does not concede that the form was successfully
submitted, stating only that Colassi "made . . . attempts" to
apply online in February 2012.  Def.'s Reply Mem. at 9, Doc. No.
57.

no evidence of exhaustion, and because the record suggests that the claim is still being processed, I conclude that Colassi has not exhausted his administrative remedies for long-term benefits.

## IV.   CONCLUSION

For all of the foregoing reasons, I grant BAE's motion for judgment on the administrative record (Doc. No. 35), and deny Colassi's motion (Doc. No. 55).

SO ORDERED.

/s/Paul Barbadoro
Paul Barbadoro
United States District Judge

May 15, 2012

cc:   Kenneth William Colassi
      Byrne J. Decker, Esq.
      John C. Kissinger, Jr., Esq.